**In re the MARRIAGE OF Robert Norman CLINTON and Patricia K. Clinton.**

**Upon the Petition of Robert Norman Clinton, Petitioner–Appellant,**

**And Concerning Patricia K. Clinton, Respondent–Appellee.**

**No. 97–1092.**

Court of Appeals of Iowa.

March 27, 1998.

Mona Knoll and Michelle Arenson Leventhal of Nazette, Marner, Good, Wendt & Knoll, Cedar Rapids, for appellant.

Margaret T. Lainson of Meardon, Sueppel, Downer & Hayes P.L.C., Iowa City, for appellee.

Heard by CADY, C.J., and SACKETT and HUITINK, JJ.

SACKETT, Judge.

Petitioner-appellant Robert Norman Clinton appeals from the decree dissolving his twenty-six year marriage to respondent-appellee Patricia K. Clinton. We affirm as modified.

We first address Robert's contention the trial judge should have recused himself. Before hearing evidence in the case, Judge Thomas M. Horan told the parties that twenty-four years earlier while he was serving as an assistant county attorney he was named in that capacity as a defendant in a suit filed by Robert on behalf of a Missouri prisoner. Robert filed the suit as a part of his duties at the Iowa Law School's legal clinic. Judge Horan told Robert the prior litigation would not affect his judgment in this case. Robert did not object to Judge Horan hearing the case. Robert's attorney assured Judge Horan he did not want him to withdraw.

Robert now contends he did not object to Judge Horan hearing his case because he took the judge at his word and was assured he would not be biased. Robert argues he had the first clear indication of bias on receiving the decree dissolving the marriage. After the decree was filed, Robert raised the issue in a motion for new trial, which was overruled.

Robert now contends Judge Horan abused his discretion in not disqualifying himself, and the judge was required to get a written agreement signed indicating the relationship was immaterial.

■ Iowa Code of Judicial Conduct Canon 3D(1)(a) appears to be the section Robert relies on. It reads as follows:

**D. Disqualification.**

(1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) The judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

Iowa Code of Judicial Conduct Canon 3D(1)(a) (1998). Canon 3D(1)(a) is basically a broad standard by which a judge should sua sponte determine the matter of self-recusation. Stated otherwise, followed by specifics (interest and relationship), it stands as a guiding precept upon which every judge, by an objective in-depth search of his or her own conscience, must decide whether a fair trial dictates he or she should make way for another judge to preside in a given justiciable controversy, be it civil, criminal, or otherwise. *Forsmark v. State*, 349 N.W.2d 763, 767 (Iowa 1984); *State v. Smith*, 242 N.W.2d 320, 323–24 (Iowa 1976).

■ The burden is on a party seeking recusal to establish the basis for it, and the determination is committed to the judge's discretion. Abuse of discretion must appear before an appellate court will interfere. *See Smith*, 242 N.W.2d at 324. Judge Horan did not abuse his discretion in not recusing himself. Robert has failed to show the trial judge should have recused himself.

■ We also disagree with Robert the writing required in Canon 3E applied to a disqualification under 3D(1)(a). The section specifies the written agreement is only applicable to Canon 3D(1)(c) and 3D(1)(d).

Robert's other challenges to Judge Horan's impartiality hinge on Robert's dissatisfaction with the financial provisions in the decree. We do not accept Robert's contention these provisions reflect bias on the part of the trial judge.

■ Additionally, we review de novo Robert's challenges to the economic provisions of the decree, primarily the alimony awarded to Patricia. *In re Marriage of Craig*, 462 N.W.2d 692, 693 (Iowa App.1990). While not bound by the trial court's factual findings, we give them weight in considering the credibility of witnesses. *In re Marriage of Farrell*, 481 N.W.2d 528, 530 (Iowa App. 1991).

Robert was ordered to pay Patricia spousal support of $1200 per month until she reaches sixty-two years of age, dies, or remarries, whichever occurs first. Robert contends the issue of alimony was not before the district court, he had insufficient time to prepare to litigate the issue of alimony, and his constitutional rights of due process were violated.

Robert filed the dissolution action. Patricia's answer did not specifically request alimony but asked for general equitable relief. Robert contends as a consequence alimony was not an issue before the trial court.

Robert acknowledged after the pretrial conference on January 16, 1997, he knew Patricia was asking for spousal support. The pretrial order specifically listed alimony as an issue to be tried. At that time, no trial date had been fixed. The trial was subsequently fixed for April 3, 1997. Robert filed a motion for continuance. The trial was continued to May 6, 1997.

Iowa Code section 598.5(9) provides a petition in a dissolution shall set forth an application for permanent alimony. In *Hopping v. Hopping*, 233 Iowa 993, 10 N.W.2d 87 (1943), the Iowa court rejected the argument alimony was waived where it was not specifically included in the prayer of the petition. The court said a party to a divorce suit should recognize the statutes dealing with divorce provide the court can award alimony. *Id.* at 997, 10 N.W.2d at 90. In *In re Marriage of Miller*, 475 N.W.2d 675 (Iowa App.1991), we found no abuse of discretion in the trial court's decision to allow a wife to amend her petition at the time of trial to request alimony where she had earlier made a general request for support and equitable relief. *Id.* at 677.

■ The issue of alimony was before the trial court. Patricia's prayer was for equitable relief. Robert was notified in the pretrial order alimony would be an issue. With more than three months between the pretrial conference and trial, Robert was afforded ample time for discovery and preparation necessary to challenge Patricia's claim. We reject his arguments on this issue.

Robert next contends Patricia is not entitled to alimony.

Both parties are fifty years of age. Robert is a lawyer and his income without summer school teaching is $127,500. He receives annual income from royalties and consulting fees and as a trial judge. Patricia is a nurse who holds bachelor's, master's, and doctorate degrees; her annual earnings are less than $50,000.

■ In reviewing this issue, we consider, among other things, the parties' income potential. *In re Marriage of Stewart*, 356 N.W.2d 611, 613 (Iowa App.1984). Yet, each party has chosen his or her respective field. Their entry into their chosen field was the result of certain personal aptitudes and abilities. The fact the field of one may generate more income than the field of the other is not the controlling factor in the alimony award where both parties have the education and potential to supply for themselves a very adequate living. *See In re Marriage of Mouw*, 561 N.W.2d 100, 102 (Iowa App.1997).

■ The education Patricia obtained during the marriage will enhance her future earnings and is a proper factor to consider in assessing the equity of the economic provisions of a dissolution decree. *See In re Marriage of Francis*, 442 N.W.2d 59, 62 (Iowa 1989); *In re Marriage of Janssen*, 348

N.W.2d 251, 253–54 (Iowa 1984); *In re Marriage of Horstmann,* 263 N.W.2d 885, 891 (Iowa 1978); *In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983). The economic provisions of a dissolution decree are based on a number of factors, including the length of the marriage, the age and health of the parties, the parties' earning capacities, the levels of education, and the likelihood the party seeking alimony will be self-supporting at a standard of living comparable to the one enjoyed in the marriage. *See In re Marriage of Geil,* 509 N.W.2d 738, 742 (Iowa 1993); *In re Marriage of Versluis,* 521 N.W.2d 760, 761 (Iowa App.1994). This is not a computation of dollars and cents, but a balancing of equities. In a marriage of long duration, alimony can be used to compensate a spouse who leaves the marriage at a financial disadvantage, especially where the disparity in earning capacity is great. *See Geil,* 509 N.W.2d at 742.

■ A review of the record convinces us although Patricia was able to work in her chosen field and obtain additional education during the marriage, the structure of the marriage was to consider Robert's career primary. Patricia spent eight years out of the job market and structured her life to enhance Robert's career. We look at what the parties have done with their careers in fixing alimony. *In re Marriage of Griffin,* 356 N.W.2d 606, 609 (Iowa App.1984).

■ We modify the trial court's award of alimony by reducing the amount from $1200 a month to $600 a month and provide alimony shall terminate when Patricia reaches sixty-two years of age, dies, remarries, or cohabits with a male, whichever occurs first.

Robert also contends the property division was not equitable. The parties stipulated to the value of all the property other than the value of their retirement accounts. There also was an agreement as to who would receive what property. The division resulted in the property being nearly equally divided.

Robert contends his retirement account should be valued as of September 30, 1996, the day the parties separated. Patricia contends it should be valued as of the date of trial. There is a $500 monthly contribution to Patricia's plan and a $1912.50 monthly contribution to Robert's. The trial court valued the retirement accounts as of the May 6, 1997, trial date.

■ Retirement benefits are properly considered in formulating an equitable division in a dissolution decree. *Miller,* 475 N.W.2d at 677; *see also In re Marriage of Voss,* 396 N.W.2d 801, 803 (Iowa App.1986). Property, including retirement benefits, should be valued as of the trial date. *See In re Marriage of Muelhaupt,* 439 N.W.2d 656, 661 (Iowa 1989); *In re Marriage of Moffatt,* 279 N.W.2d 15, 20 (Iowa 1979). The real question is whether the division of the benefits is equitable. *Moffatt,* 279 N.W.2d at 19. We find it is and affirm the trial court on this issue.

■ Patricia has requested an award of appellate attorney fees. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). Patricia has ample resources to pay her own attorney. Each party shall pay his or her own attorney fees.

We affirm as modified. Costs on appeal are taxed one-half to each party.

**AFFIRMED AS MODIFIED.**