**IN THE COURT OF APPEALS OF IOWA**

No. 16-0504
Filed October 12, 2016


**IN RE THE MARRIAGE OF JULIE ANN MILLER
AND CLAUDE EARL MILLER**

**Upon the Petition of
JULIE ANN MILLER, n/k/a JULIE ANN MINIKUS**
    Petitioner-Appellant,

**And Concerning
CLAUDE EARL MILLER,**
    Respondent-Appellee.
_____


Appeal from the Iowa District Court for Black Hawk County, Andrea J.

Dryer, Judge.


Julie Minikus appeals the economic provisions of the decree dissolving

her marriage to Claude Miller.  **AFFIRMED.**


Joseph G. Martin of Swisher & Cohrt, P.L.C., Waterloo, for appellant.

Joseph R. Sevcik, Cedar Falls, for appellee.


Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

In this appeal of a dissolution decree, we are to determine what property division is equitable to the parties of a fourteen-year marriage. Specifically, we are asked to review the value of the marital residence, whether refusing to divide property inherited by one party would be inequitable to the other, and the amount of an equalization payment to balance the equities.

On our de novo review, *see In re Marriage of Clinton*, 579 N.W.2d 835, 838 (Iowa Ct. App. 1998), we keep in mind the following principles: We are to examine the entire record before us and adjudicate the issues anew. *See In re Marriage of Dean*, 642 N.W.2d 321, 323 (Iowa Ct. App. 2002). We are not bound by the trial court's factual findings, though we give them weight, especially with regard to credibility determinations. *See In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). The trial court has considerable latitude in determining how the parties' property should be distributed, and we will not disturb its ruling unless there has been a failure to do equity. *See In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005).

Julie Minikus and Claude Miller married in 2001. In October 2013, they separated and Julie moved out of the marital residence. Julie filed a petition seeking to dissolve the marriage on March 11, 2014. Although the parties stipulated to the division of some of their property, several items remained to be resolved at trial. Three of these are the subject of this appeal: the value of the

marital residence, an inheritance Claude received before the parties married, and the amount Claude would be required to pay Julie to equalize the settlement.[1]

**I. Valuation of the Marital Residence.**

The parties disagreed on the value of the marital residence, which they constructed in 2002 on a lot adjacent to the home of Claude's mother. At trial, Claude introduced into evidence a March 10, 2014 appraisal performed by a state-certified residential real property appraiser, which the bank obtained when Claude tried to refinance the home following the parties' separation. The appraisal valued the home at $152,000 using a sales comparison approach. Using a cost approach, the appraisal valued the home at $181,692.

Claude argued the value of the home was $152,000. Julie argued the $181,692 figure more accurately reflected the residence's value, which she

---

[1] Claude argues this court is without jurisdiction to hear Julie's appeal because it is untimely. *See Robco Transp., Inc. v. Ritter*, 356 N.W.2d 497, 499 (Iowa 1984) (noting that the appellate courts have no jurisdiction to hear an untimely appeal). Iowa Rule of Appellate Procedure 6.101(1)(b) requires that a notice of appeal be filed "within [thirty] days after the filing of the final order or judgment" or "within [thirty] days after the filing of the ruling on [a timely-filed] motion." The district court filed the dissolution decree on January 10, 2016. Julie filed her notice of appeal on March 17, 2016, more than sixty days after the decree was entered. However, after requesting and receiving a grant of additional time, Julie filed a timely motion to enlarge or amend pursuant to Iowa Rule of Civil Procedure 1.904(2). Claude filed a reply and a "very brief" motion to amend or enlarge of his own. The parties' motions were denied by a February 19, 2016 order. Julie's notice of appeal was filed within thirty days thereafter.

Ordinarily, "if a party files a timely and procedurally proper motion under [rule] 1.904(2), this extends the deadline for filing the notice of appeal to thirty days after the ruling on the motion." *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 525 (Iowa 2015). Only a "proper rule 1.904(2) motion" will extend the time for appeal. *See Hedlund v. State*, 875 N.W.2d 720, 725 (Iowa 2016). A proper rule 1.904(2) motion is one that addresses rulings on factual issues tried without a jury; legal issues can only be raised in the context of an issue of fact tried by the court without a jury. *See Baur v. Baur Farms, Inc.*, 832 N.W.2d 663, 668 (Iowa 2013). Such a motion may also request a ruling on an issue the court overlooked or ask the court to enlarge or amend findings that fail to comply with rule 1.904(1). *See id.* at 669. However, the time for appeal is not tolled if the motion only rehashes legal issues previously raised. *See id.* at 668-69.

Because resolution of this matter will not affect the outcome of this appeal, we will assume—without deciding—that Julie's 1.904(2) motion tolled the time for appeal.

believed to be more than $200,000 based on a certified market analysis performed by her sister, who lived in Wyoming, and the home's assessed value in the years leading up to the dissolution.

In valuing the marital residence, the district court adopted the $152,000 figure the 2014 appraisal arrived at using the sales comparison approach. The court gave no weight to the comparative market analysis data Julie offered, finding it could not be relied upon to accurately determine the value of the marital residence for the following stated reasons:

> First, no evidence was presented that the comparative market analysis was done by a realtor with experience in, and accurate, reliable knowledge of, the local real estate market. Second, the e-mail accompanying the comparative market analysis data makes it clear that the individual who was attempting to estimate the value of the property had not actually viewed the property and taken its current condition into account. Third, Julie's comparative market analysis data does not explain why the particular properties selected for comparison would be appropriate properties to use for that purpose.

The court further found the assessed value of the home was not the best measure of its value because "[a]ssessment for the purpose of taxation is based upon formulas to establish property values that do not necessarily correlate with the market value of the property." Instead, the court found the sales comparison approach used in the appraisal was the best evidence of the property's value.

On appeal, Julie again argues the marital residence should be valued at $181,692. She notes that Iowa Code section 441.21(1) (2013) states property shall be assessed on its actual value. She also claims "significant evidence" indicated the true value of the home was "significantly higher" than $152,000. Although she admits the comparative market analysis she introduced into

evidence was "not as thorough as the certified appraisal," she states the comparative market analysis was "done more contemporaneous with trial."

"Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *Hansen*, 733 N.W.2d at 703. Here, the court accepted Claude's valuation of the marital residence, which was based on the sales comparison approach a certified appraiser used to appraise the home's value. Although the evidence could also support a valuation as high as $181,692, the court's valuation of the marital residence was within the range of the evidence. Therefore, we will not disturb it on appeal.

**II. Divisibility of the Premarital Inheritance.**

The parties also disagreed on whether $44,000 Claude inherited in 1999 should be included in the property division. Before the marriage, Claude used some of the inheritance to pay off Julie's student loans, outstanding taxes, and the mortgage on her home. After the parties married, that money was placed into a joint bank account and was later transferred to a joint investment account. At the time the parties separated, the money was in an E*TRADE account, valued at approximately $39,819. Julie argues the inheritance money should be included in the property division for purposes of an equitable division.

The district court found the equities did not require inclusion of the inheritance in the property division because Claude kept the money separate in a particular investment account and Julie did not contribute to that account during the marriage. Accordingly, it set the $39,819 in the E*TRADE account aside from the property division.

Property that a party inherits before the marriage "is the property of that party and is not subject to a property division under [Iowa Code section 598.21(6)] except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage." In deciding whether removing Claude's inheritance from the property division would be inequitable to Julie, we consider the following factors:

> (1) contributions of the parties toward the property, its care, preservation, or improvement; (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised; (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them; (4) any special needs of either party; (5) any other matter which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*In re Marriage of Liebich*, 547 N.W.2d 844, 850 (Iowa Ct. App. 1996).

Julie argues the inheritance should be considered in the property division because the parties put the money into a joint account and jointly made decisions regarding how the money should be used. However, "[p]lacing inherited property into joint ownership does not, in and of itself, destroy the separate character of the property." *Id.*

Julie also notes the inheritance money was commingled and used for marital purposes until November 2005, when she sold the home she owned prior to the marriage and received approximately $75,000 in proceeds from the sale. She argues that if she had "not consented to use of the sale proceeds to 'refund' the inheritance, that there would be absolutely no differentiation between the eventual [E*TRADE] account and any other asset of the marriage." She also

argues it would be inequitable to exclude Claude's inheritance from the divisible property when her home's sale, which brought approximately $30,000 more into the marriage than Claude's inheritance, "is given no consideration."

Considering the factors outlined above along with the factors to be considered in making a property division generally, *see* Iowa Code § 598.21(5), we conclude that excluding Claude's inheritance from the divisible property is not inequitable to Julie. Including the proceeds from the sale of Julie's home in the property division while not including Claude's inheritance does not, in itself, result in inequity. After all, the legislature has distinguished the two. *Compare id.* § 598.21(5)(b) (listing premarital property as a factor to be considered in making an equitable property division), *with* § 598.21(6) (stating inherited property is subject to division only if refusing to divide the property is inequitable). We note the proceeds from the sale of Julie's home would not have been as great if Claude had not used part of his inheritance to pay off her mortgage. Julie also benefited from the inheritance by Claude's use of the money to pay her outstanding tax debt and her student loans. Having already benefited from the inheritance, it would be inequitable to Claude to include the inheritance in the property division to increase Julie's share of the marital property. Therefore, we will not disturb the court's exclusion of the inheritance money in the property division for purposes of an equitable division.

**IV. Equalization Payment Amount.**

Finally, although the parties agreed Claude should make a payment to Julie to equalize the property settlement, they disagreed on the amount of the equalization payment. In the conclusions of law section of the decree, the district

court stated: "The court finds that reducing the equalization payment from $39,036.50 to $29,036.50 is fair and equitable." The court determined this "reduction"[2] was equitable because just prior to initiating the dissolution proceedings, Julie obtained a $18,000 cash advance from Claude's credit card account and placed the money in an account in her name, which she used to pay part of her attorney fees and to purchase household items. The court also noted that Claude paid a greater proportion of the marital debt after the parties separated. Julie argues the $10,000 reduction in the equalization payment is inequitable because there is no evidence regarding (1) the amount of funds she used from the cash advance to pay her attorney fees or (2) the parties' living expenses following separation.

The $10,000 reduction in the equalization payment is equitable under the facts before us. After the parties separated, Claude continued to make the mortgage payments on the marital residence, which increased the property's equity, benefiting Julie. He also took responsibility for the credit card debt and made payments on those accounts. Although there is no evidence as to the amount of attorney fees Julie paid with the $18,000 cash advance she took from Claude's credit card account, it is undisputed that Claude did not benefit from that advance, but he incurred the responsibility for repaying that amount.

In total, the property division set forth in the decree is equitable. Accordingly, we affirm.

**AFFIRMED.**

---

[2] It is not clear to us how the $39,036.50 was calculated.