# IN THE COURT OF APPEALS OF IOWA

No. 18-1468
Filed July 3, 2019

**IN RE THE MARRIAGE OF MARIE ROSONKE
AND BRIAN ROSONKE**

**Upon the Petition of
MARIE ROSONKE,**
      Petitioner-Appellant,

**And Concerning
BRIAN ROSONKE,**
      Respondent-Appellee.
_____

Appeal from the Iowa District Court for Chickasaw County, Richard D. Stochl, Judge.

Marie Rosonke appeals from the order modifying the decree dissolving her marriage to Brian Rosonke. **AFFIRMED.**

Crystal L. Usher of Nazette, Marner, Nathanson & Shea LLP, Cedar Rapids, for appellant.

Christopher O'Donohoe of Elwood, O'Donohoe, Braun & White, LLP, New Hampton, for appellee.

Considered by Potterfield, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

Marie Rosonke appeals from the order modifying the decree dissolving her marriage to Brian Rosonke. She contends the court erred in placing the children in Brian's physical care and in ordering her to terminate health insurance coverage available through her employer. She argues the district court judge erred in failing to recuse himself from the proceedings. She requests an award of her appellate attorney fees.

**I. Background Facts and Proceedings.**

Marie and Brian were divorced in June 2016. They have three children, who were born in 2007, 2009 and 2013. Pursuant to the parties' stipulation, the decree granted them joint legal custody and shared physical care of their three children. Pursuant to the stipulation, the parties alternated care of the children on a weekly basis.

Since the divorce, Marie has been in a relationship with Josh Funk. Josh lives in Elkader, approximately fifty-eight miles from New Hampton, where the children attend school. In December 2017, Marie petitioned to modify the custody provisions of the decree to grant her physical care of the children based in part on her planned move to Elkader. In his answer, Brian requested physical care of the children.

Marie began staying with Josh in Elkader in January 2018 before formally moving there in April. Because of the amount of travel required to transport the children from Elkader to school while in Marie's care, Brian moved the court for a temporary custody order placing the children in his physical care during the week

for the remainder of the school year.  The district court granted the temporary order following an April hearing.

The modification action came to trial in July 2018.  The district court entered its order modifying the decree the following month.  The court found that although the parties had "some communication problems, they generally got along well and co-parented," and "the children were all doing very well under the shared care arrangement."  However, it found that Marie's move outside of the children's school district was a substantial change in circumstances warranting modification of the custody provisions of the dissolution decree.  Because her move eliminated the possibility of continuing a shared physical care arrangement, the court went on to determine to whom it should award physical care.  Although the court found both Marie and Brian have "demonstrated an equal ability to care for the children," it determined that placing the children in Brian's physical care would serve their best interests.  The court noted the lack of connections the children have in Elkader, where only their mother and her boyfriend live, versus those they have established in New Hampton, where they have lived and attended school their whole lives and have family and friends in the community.

**II. Modification of Custody.**

We review the modification order de novo.  *See In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006).  In doing so, we give weight to the district court's fact-findings, especially those concerning witness credibility, though we are not bound by them.  *See id.*  "We recognize that the district court 'has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity.'"  *See id.* (quoting

*In re Marriage of Walters*, 575 N.W.2d 739, 741 (Iowa 1998)). We afford the district court "considerable latitude" in its determination "and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

The court may modify the custody provisions of a dissolution decree only if the parties' circumstances must have substantially changed in a way that was not within the parties' contemplation at the time the decree's entry. *See In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct. App. 1998). Here, there is no dispute that a substantial change in circumstances has occurred warranting modification. Marie argues their demonstrated inability to co-parent necessitates modification, claiming Brian has failed to communicate important information with her on numerous occasions. The district court rejected this claim, finding that in spite of "some communication problems, [the parties] generally got along well and co-parented." Rather, the court found Marie's move alone amounted to a substantial change in circumstances that rendered a shared physical care arrangement unworkable. If the parties' shared physical care arrangement were to continue as provided in the dissolution decree, it would require two hours of transportation for the children to and from school every other week. We agree that under these circumstances, shared physical care is no longer feasible.

When shared physical care is no longer in the children's best interests, the court must determine which parent to grant physical care. *See id.* at 870-71. In cases in which a noncustodial parent seeks physical care, that parent bears a heavy burden of proving "the ability to offer superior care" because the original decree found the custodial parent to be the better parent. *Melchiori v. Kooi*, 644

N.W.2d 365, 368 (Iowa Ct. App. 2002). However, for parents sharing physical care, the court has previously determined both to be suitable physical caretakers. *See id.* at 368-69. In such cases, the parent who "can administer most effectively to the long-term best interests of the children and place them in an environment that will foster healthy physical and emotional lives is chosen as primary physical care giver." *Walton*, 577 N.W.2d at 871. Our objective "is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). The Iowa legislature and our supreme court have provided a nonexclusive list of factors the court is to consider in determining the children's best interests. *See id.* at 696.

The district court found that the parties have "demonstrated an equal ability to care for the children." Marie complains that because the court found neither party was the "better" parent, the court should only have modified the shared care plan. However, the court placed the children in Brian's physical care after finding that it was in their best interests to reside with him "in the only home and community they have ever known." In other words, their caregiving ability being equal, the court found that Brian offered the environment that was better able to foster the children's physical, mental, and emotional health. We concur in this determination.

Marie also complains that the court refused to allow the oldest child to testify as to her preference concerning custody. In determining what custody arrangement is in a child's best interests, the court considers "[w]hether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity." Iowa

Code § 598.41(3)(f) (2017). However, the child's wishes are not controlling and are given less weight in a modification action than would be given in an original custody proceeding. *See In re Marriage of Hunt*, 476 N.W.2d 99, 101 (Iowa Ct. App. 1991). The analysis is more complicated than simply asking the child's preference. *See id.* at 101-02. In assessing the child's preference, the court must look at the child's age and educational level, the strength of the child's preference, the child's relationship with family members, and the reasons the child gives for the decision. *See In re Marriage of Jahnel*, 506 N.W.2d 473, 475 (Iowa Ct. App. 1993).

Although the oldest child did not testify at trial, the court did note her preference to live with Marie. Importantly, the court found that Marie "has immersed the children, especially the oldest, in this controversy." The court concluded that the child's "desires are not surprising considering the amount of involvement she has had in these proceedings." The court also considered the child's age of eleven before concluding that "her desires do not override the fact it is in her best interest to remain in a supportive environment." The record supports the court's findings and the court adequately weighed the child's preference in light of the facts. *Cf. Herron v. Herron*, 141 N.W.2d 562, 566 (1966) ("The wishes of a seven or eight-year-old or even a ten-year-old should be given little if any weight since they are not of an age to exercise discretion in choosing a custodian."); *Hunt*, 476 N.W.2d at 102 (finding weight of nine-year-old child's custody preference was diminished based on evidence showing the father's actions influenced her testimony); *In re Marriage of Behn*, 416 N.W.2d 100, 102 (Iowa Ct. App. 1987) (noting that although testimony by ten-and-one-half-year-old child the court

deemed to be "mature beyond her years" concerning custody preference "may give us some insight, we are not truly knowledgeable about what goes on behind closed doors in these family homes" while the child "is privy to these interactions and they have influenced her decision").

We affirm the district court's order modifying the custody provisions of the dissolution decree to grant Brian physical care of the children.

**III. Insurance Coverage.**

Marie also challenges the portion of the court's order concerning the children's health insurance coverage. The order states:

> The court does believe it is in the best interest of the children for them to be enrolled in an insurance plan that allows them to receive care in their home community. Marie shall work with Brian to assist enrolling the children in the Hawkeye plan if it is available despite her access to coverage through her employment.

Marie notes that to be eligible for enrollment in the Hawki plan, she must terminate the health insurance coverage that is available through her employer. She complains the court failed to make a finding that her employer's health insurance plan has an unreasonable cost or is not accessible.

Iowa Code section 252E.1A(3) requires the court to "order as medical support for the child health care coverage if a health benefit plan other than public coverage is available to either parent at the time the order is entered or modified." The section defines a health benefit plan as "available" if it "is accessible and the cost of the plan is reasonable." Iowa Code § 252E.1A(3). A health benefit plan is available if the plan is accessible and the cost of the plan is reasonable. Chapter 252E defines a health benefit plan as "accessible" if it "does not have service area limitations or provides an option not subject to service area limitations" or if it "has

service area limitations and the dependent lives within thirty miles or thirty minutes of a network primary care provider." *Id.* § 252E.1(1).

Marie concedes that the health insurance coverage offered through her employer requires services to be provided at a UnityPoint facility, and the closest facility is forty-two miles from New Hampton. Because the health insurance coverage is not considered accessible under chapter 252E, the court was not required to order it as medical support. We affirm this portion of the court's order.

**IV. Recusal.**

Marie also challenges the denial of her motion for recusal. "We review a judge's recusal decision for an abuse of discretion." *State v. Millsap*, 704 N.W.2d 426, 432 (Iowa 2005). A court abuses its discretion when it acts unreasonably or bases its decision on untenable grounds. *See id.* "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.* (citation omitted).

"The burden is on a party seeking recusal to establish a basis for it, and the determination is committed to the judge's discretion." *In re Marriage of Clinton*, 579 N.W.2d 835, 837 (Iowa Ct. App.1998). "Actual prejudice must be shown before a recusal is necessary." *McKinley v. Iowa District Ct.*, 542 N.W.2d 822, 827 (Iowa 1996) (citation omitted). "The test is whether a reasonable person would question the judge's impartiality." *Id.*

Marie argues the judge's comments and rulings suggest a bias in Brian's favor. Specifically, she notes that after learning at the hearing on temporary custody that the Iowa Department of Human Services was investigating two allegations of abuse against Brian, the judge stated, "I'm well aware in modification

situations we often get allegations of abuse that turn out to be more litigation-motivated." The judge also stated that because the children were not removed from Brian's care, the allegations were not pertinent to him. Marie moved for recusal, arguing the judge's "impartiality is reasonabl[y] in question." The court denied the motion. The issue was again addressed before the start of trial. Marie's counsel stated, "It's not that you are, in fact, actually bias[ed]; it's the fact that the court has in some part issued statements on the record that seems to predispose the court to how it's going to view evidence before it's been heard on the merits."

The Iowa Code of Judicial Conduct requires that judges "uphold and apply the law, and . . . perform all duties of judicial office fairly and impartially." Iowa Code of Judicial Conduct R. 51:2.2. Recusal is required when the "judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." *Id.* r. 51:2.11(A)(1). However, the "judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *Id.* r. 51:2.11(A).

The test for disqualification is objective, and the party seeking disqualification bears the burden of proof. *See Millsap*, 704 N.W.2d at 432. "Only personal bias or prejudice stemming from an extrajudicial source constitutes a disqualifying factor." *Id.* A judge's opinions formed "on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *In re C.L.C.*, 798 N.W.2d 329, 337 (Iowa Ct. App. 2011) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). "Judicial predilection or an

attitude of mind resulting from the facts learned by the judge from the judge's participation in the case is not a disqualifying factor." *Millsap*, 704 N.W.2d at 432.

Because Marie has not met her burden of showing the judge had a personal bias or prejudice against her that stemmed from an extrajudicial source, we find no abuse of discretion.

**V. Appellate Attorney Fees.**

Appellate attorney fees are not a matter of right but rest within our discretion. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* Based on the foregoing, we decline to award Marie appellate attorney fees.

**AFFIRMED.**