# IN THE COURT OF APPEALS OF IOWA

No. 24-1424
Filed October 29, 2025

IN RE THE MARRIAGE OF BRADLEY T. BELL
AND STACY A. BELL

Upon the Petition of
BRADLEY T. BELL,
　　　Petitioner-Appellant/Cross-Appellee,

And Concerning
STACY A. BELL, n/k/a STACY A. HAVEL,
　　　Respondent-Appellee/Cross-Appellant.
_____

　　　Appeal from the Iowa District Court for Louisa County, Clinton R. Boddicker, Judge.


　　　The petitioner appeals the property division, calculation of premarital credit, award of spousal support, and award of attorney fees. The respondent cross-appeals the property division and award of attorney fees, and requests appellate attorney fees. **AFFIRMED AS MODIFIED AND REMANDED WITH DIRECTIONS.**


　　　Sasha L. Finke (argued) of Finke Law Firm PLC, Ainsworth, for appellant.

　　　Jacob R. Koller (argued) of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellee.


　　　Heard at oral argument by Tabor, C.J., and Badding and Sandy, JJ.

**SANDY, Judge.**

Bradley Bell appeals from the district court's dissolution decree requiring him to pay an equalization payment, spousal support, and attorney fees to his former wife, Stacy Bell. He argues the district court's division of marital property was inequitable, the district court erred in calculating his premarital credit, the district court erred in awarding Stacy spousal support, and that the district court abused its discretion by awarding Stacy attorney fees. Stacy cross appeals, arguing the district court's division of marital property was inequitable and that the district court abused its discretion by failing to award the full amount of attorney and expert fees she requested. She also requests appellate attorney fees.

After a de novo review, we believe the district court's equalization payment does equity for the parties, but we modify the dissolution decree to eliminate the district court's award of spousal support. The district court did not abuse its discretion in its award of attorney fees, and Stacy is also entitled to appellate attorney fees in an amount deemed reasonable by the district court on remand.

## I. Background Facts and Procedural Posture.

Stacy and Bradley met in 2012 and married in January 2015. Both parties have children from prior marriages. The parties did not have any children together during the marriage. The parties filed for divorce after approximately seven years of marriage—in May of 2022.

Bradley lives in Lone Tree, Iowa and was forty-seven years old at the date of trial. Bradley owns and operates various family businesses. He owns and operates Catnip Ridge Manure Application, Inc., Bradley T. Bell Farms, LLC, and Catnip Pork, LLC. Bradley is the sole shareholder or member of these businesses.

Bradley owned all of the business entities prior to the parties' marriage. However, the value of the businesses increased significantly during the course of the marriage.[1] He also has an interest in two of his parents' businesses. Both Bradley and his parents operate their businesses out of the same office. At the time of trial, Bradley was paying $1000 per month for the support of his youngest daughter from his prior marriage. Both Bradley and his parents employ migrant workers through the government's H2A work visa program. Bradley's businesses employ about eighteen migrant workers, and his parent's businesses employ about 900-1000 migrant workers.

Stacy lives in Cedar Rapids, Iowa and was forty-seven years old at the date of trial. When the two parties met, Stacy was working for Holmes Murphy as a licensed insurance agent. She left her position at Holmes Murphy and began working for the Bell family businesses in 2014 before the marriage. While in this role, Stacy worked full time as the office manager for all the businesses. In addition to her various administrative duties, Stacy was in charge of organizing the businesses' H2A program and satisfying requisite reporting requirements for the program. Stacy testified that she left her job at Holmes Murphy after Bradley asked her to come work for the family businesses. Stacy returned to her job at Holmes Murphy in 2019 after the marriage began to deteriorate. Stacy now makes approximately $92,000 per year in gross annual income from Holmes Murphy.

---

[1] From 2015 to 2022, Bell Farms appreciated $978,691 in value, Catnip Pork appreciated $1,160,556 in value, and Catnip Ridge appreciated $2,403,908 in value.

Throughout the marriage, the parties maintained separate bank accounts but regularly filed joint tax returns from 2015 and 2021. Between 2013 and 2019, Stacy and Bradley spent approximately eighty to ninety percent of their nights together. Stacy took care of many regular household duties at the new home Bradley constructed for the couple.[2]

The district court found that the marital net worth of the parties was $3,977,511. This number was reached by calculating the total assets ($4,959,896) less total liabilities ($982,385). The district court adopted these valuations from Stacy's expert witness, Eric Engstron. The district court expressly found Engstron's valuations the more credible valuation based on the evidence and testimony before it.[3]

The district court ordered that Bradley make an equalization payment to Stacy in the amount of $1,415,125. This number was reached by awarding sixty percent of the marital net worth ($2,386,506) to Bradley and forty percent ($1,591,005) to Stacy. The district court then subtracted the value of Stacy's marital assets ($175,880) from her allocation of the marital net worth, $1,415,125.

The district court further ordered that Bradley pay Stacy transitional spousal support in the amount of $2000 per month until earliest of the following: (1) the death of either party; (2) Stacy's remarriage; (3) the payment of the property equalization payment; or (4) the expiration of twenty-four months.

---

[2] The land on which the home was built was gifted to Bradley by his parents.
[3] By and large, the expert valuations were similar except that Bradley's expert provided a five percent "marketability discount" that Stacy's expert did not.

The district court further ordered that Bradley pay Stacy $25,000 toward her attorney fees.

## II. Standard of Review.

"We review cases tried in equity, such as dissolution proceedings, de novo." *In re Marriage of Hansen*, 886 N.W.2d 868, 871 (Iowa Ct. App. 2016). "Although we give weight to the factual determinations of the district court, their findings are not binding upon us." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012). We will only disturb the district court's ruling when it fails to do equity. *Hansen*, 886 N.W.2d at 871.

## III. Analysis.

### A. Division of Marital Property

Parties to a marriage are each entitled to a just and equitable share of marital assets. *In re Marriage of Havran*, 406 N.W.2d 450, 451 (Iowa Ct. App. 1987). While a mathematically equal division of property is not required, an equitable division is. *In re Marriage of Russell*, 473 N.W.2d 244, 246 (Iowa Ct. App. 1991). And although an equal division is not necessary, it should still be a general goal of trial courts to make the division of property approximately equal. *In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979). The property rights of a divorcing couple are to be valued as of the date of trial. *In re Marriage of Clinton*, 579 N.W.2d 835, 839 (Iowa Ct. App. 1998).

Iowa Code section 598.21(5) (2022) provides:

> The court shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties after considering all of the following:
>     a. The length of the marriage.
>     b. The property brought to the marriage by each party.

c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

d. The age and physical and emotional health of the parties.

e. The contribution by one party to the education, training, or increased earning power of the other.

f. The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

g. The desirability of awarding the family home or the right to live in the family home for a reasonable period to the party having custody of the children, or if the parties have joint legal custody, to the party having physical care of the children.

h. The amount and duration of an order granting support payments to either party pursuant to section 598.21A and whether the property division should be in lieu of such payments.

i. Other economic circumstances of each party, including pension benefits, vested or unvested. Future interests may be considered, but expectancies or interests arising from inherited or gifted property created under a will or other instrument under which the trustee, trustor, trust protector, or owner has the power to remove the party in question as a beneficiary, shall not be considered.

j. The tax consequences to each party.

k. Any written agreement made by the parties concerning property distribution.

l. The provisions of an antenuptial agreement.

m. Other factors the court may determine to be relevant in an individual case.

Section 598.21(6) addresses the distribution of inherited or gifted property in a dissolution. That subsection provides:

Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

Iowa Code § 598.21(6).

A district court should assign value to the property awarded to each of the parties. This allows the reviewing court to assess whether an equitable division of property was effectuated. It will also aid the parties in better understanding the respective property awards, which will, in some cases, dispense with the need to appeal. *In re Marriage of Bonnette*, 584 N.W.2d 713, 714 (Iowa Ct. App. 1998). If it appears a trial court sorted through the economic details of the parties and made a fair division supported by the record, we give strong deference to such a property award. *In re Marriage of Vieth*, 591 N.W.2d 639, 641 (Iowa Ct. App. 1999).

After a de novo review of the record, our view is that equity was done here and that the district court's order made a fair division that was supported by the record.

Bradley argues that the district court's division of marital property was inequitable, and that the appreciation of his premarital assets should not have been divided because of the length of the marriage and because he contributed more to the businesses than Stacy did. Stacy argues that she should be entitled to an equalization payment of $1,812,876, which would be fifty percent of the marital net worth. We disagree with both parties and affirm the district court's order.

Bradley and Stacy were married seven years when Bradley filed for divorce, and eight years at the time of trial. A marriage of this length is generally to be considered a "short-term marriage" under Iowa law. *In re Marriage of Shanks*, 805 N.W.2d 175, 179 (Iowa Ct. App. 2011). "[T]o achieve equity, the division need not be equal in most short-term marriages. Rather, it is often equitable to simply award the property to the party that brought it into the marriage." *Hansen*, 886 N.W.2d at 873. Although a party's claim to premarital property owned by the other spouse

in a short-term marriage is minimal, appreciation in the value of premarital assets during the marriage is a marital asset. *Id.* at 873.

Bradley and Stacy's marriage was indeed short-term. But the assets appreciated significantly during the marriage. Our supreme court has stated that it is not appropriate to emphasize how each asset appreciated—fortuitously versus laboriously—when dividing property. *In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007). That said, the marriage in *Fennelly* was more than twice as long as the marriage present here. *Id.* And we agree with the district court's well-reasoned analysis that Stacy contributed to both the businesses and marriage. As the district court aptly put, she was more than a "girl Friday".[4]

For example, Stacy paused her career at Holmes Murphy to work for Bradley's businesses. She worked full time as the office manager for the Bell family businesses. In addition to various administrative duties, Stacy oversaw the organization of the businesses' H2A visa program, satisfying the program's reporting requirements. Whether the significant appreciation of business valuation was exclusively due to Stacy's hard work or not, the record reveals Stacy is a hard worker who significantly contributed to the Bradley businesses' success.

Marriage does not come with a ledger. *Fennelly*, 737 N.W.2d at 103–04. Spouses agree to accept one another for better or worse, and each party's total contributions to the marriage cannot be reduced to a dollar amount. Many contributions are incapable of calculation, such as love, support, and

---

[4] A "girl Friday" is "a female assistant (as in an office) entrusted with a wide variety of tasks." *Girl Friday,* Merriam-Webster, https://www.merriam-webster.com/dictionary/girlFriday (last visited October 22, 2025).

companionship. "Financial matters . . . must not be emphasized over the other contributions made to a marriage in determining an equitable distribution." *In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App. 1996).

Other important considerations in our analysis under section 598.21(5) are that Bradley has a much higher earning capacity than Stacy and brought significantly more property into the marriage than Stacy. The property that Bradley brought into the marriage was the vehicle for the large growth of net worth. Bradley will continue to have a higher earning capacity than Stacy. Given these considerations, we believe the district court's allocation of property and equalization payment does equity. Therefore, we will not disturb it.

### B. Premarital Credit

We give weight to the district court's findings in dissolution matters, "especially to the extent credibility determinations are involved." *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). "We will not disturb the district court's valuation of assets if it is within a permissible range of the evidence." *Shanks*, 805 N.W.2d at 177.

Bradley argues that the district court erred in calculating his premarital credit and that he is entitled to a $1,231,100 premarital credit for Catnip Ridge. More specifically, he claims that he had a premarital net equity in machinery and equipment of $1,017,587 at the time of marriage.[5] Yet puzzlingly, Bradley's reply brief claims that the premarital credit figure should be $749,087 (the value of the

---

[5] Bradley claims that he owned $1,439,200 worth of machinery and a combined loan balance of $421,613 on the equipment listed, resulting in the claimed $1,017,587 premarital credit.

equipment he supposedly transferred to Catnip Ridge during the marriage). Bradley argues that the district court's award of "premarital credit for Catnip [Ridge] did not include any credits for machinery and equipment Bradley owned when the parties married."

After an extensive review of the record, we refuse to grant Bradley's requested premarital credit because his brief does not point us to (nor can we find) anything in the record that verifies his claim. There is no specific transference documentation that shows Bradley conveyed personally owned equipment to Catnip Ridge. Additionally, nothing was presented to the trial court to show that the equipment increased the value of Catnip Ridge.

We have previously refused to disturb a district court's award of premarital credit of property because of the parties' inability to clearly show documentation of funds supposedly used to increase its value. *In re Marriage of Elam,* No. 03-0221, 2004 WL 370247, at *4 (Iowa Ct. App. Feb. 27, 2004). In *Elam*, we refused to award premarital credit because "[i]mportantly, the tracing of the funds from February 2000 back to premarital assets is far from clear in the record." *Id.* We apply the same reasoning here. We refuse to award Bradley the additional premarital credit he claims because his tracing of the specific transference of the premarital equipment is "far from clear in the record." *Id.*

Indeed, the record does contain a vehicle and equipment schedule attached to Bradley's 12/31/14 personal financing statement. This schedule is from 12/31/13 and lists equipment valued at $1,603,200 under Bradley's name. Critically, however, there is no accompanying testimony or documentation detailing what equipment in this schedule was supposedly conveyed from Bradley

to Catnip Ridge. There is nothing in the record showing when or how any of this equipment was supposedly transferred from Bradley's name to Catnip Ridge. Arguendo, even if there was some hazy record, the figures would fall well short of the $1,231,100 Bradley claims he is entitled to.[6] Bradley asks us to award him $1,231,100 in additional premarital credit without being able to show us anything in the record proving he transferred title of such a large sum of personal equipment to Catnip Ridge. Although Bradley's briefing points us to several exhibits in the record to try and prove this proposition, none of those exhibits—N3, 35C, 35G, 58, and Q2—substantiate Bradley's claim. Finally, in addition to the exhibits and testimony not clearly identifying the equipment's specific value and provenance, the joint pre-trial stipulation form signed and filed with the court was likewise missing such substantiation. We cannot award Bradley the premarital credit he claims he is entitled to without adequate substantiation.

Bradley also claims that he is entitled to additional premarital credit for his rental properties. There are two categories of rental properties: ones he brought into the marriage and later sold during the marriage and ones that existed/remained at the time of dissolution. To the former, as he notes in his own brief, Bradley has failed to submit any documentation showing the appreciation of value of these properties from the time of marriage to their sale. We encounter the same problem here. We lack the necessary documentation to trace the funds of the premarital properties. And Bradley's tracing of the premarital properties is not

---

[6] For example, Bradley's own interrogatory answer only accounts for $195,276 of premarital personal equipment transferred to Catnip Ridge. The district had given Bradley some pre-marital personal equipment credit, in the amount of $87,250 (tractor, goose-neck trailer, trailer, picker, and Land Pride mower).

only "far from clear in the record," it is wholly absent. *Id.* We know the value of the properties at the time of sale, and that Bradley reinvested the funds he received from the sale of these properties into a loan on his ex-wife's home and into Catnip Pork. But premarital credit was awarded for these assets by the district court, and we will not disturb that credit without proper documentation showing it to be in error. We will not award Bradley any additional premarital credit for these properties.

To the latter, there are three rental properties. Properties one and two were both owned by Bradley before the marriage. Property one did not appreciate during the marriage, and property two appreciated from $65,000 to $140,000 during the marriage. The district court awarded Bradley premarital credits of $6,500 and $65,000, respectively. Property three was purchased by Bradley in 2016 during the marriage and it was appraised at $76,000 by the end of the marriage in 2023. The district court determined property three was joint marital property and thus included its appreciated value in the marital net worth.

The district court relied on Stacy's expert witness, Eric Engstrom, for his valuations of premarital credit. The district court found Engstrom's valuations and assignment of credit owed to Bradley credible. After our de novo review of the record and giving due weight to the district court's findings of witness credibility, we affirm the district court's calculation of premarital credit.

## C. Spousal Support

"We review spousal support awards de novo." *In re Marriage of Sherwood*, 995 N.W.2d 522, 526 (Iowa Ct. App. 2023). "[W]e should intervene on appeal only where there is a failure to do equity." *In re Marriage of Gust*, 858 N.W.2d 402, 416

(Iowa 2015). "[T]ransitional spousal support is warranted where the recipient spouse may already have the capacity to for self-support at the time of dissolution but needs short-term assistance in transitioning to single life." *In re Marriage of Sokol*, 985 N.W.2d 177, 186 (Iowa 2023).

The district court awarded Stacy transitional spousal support of $2000 per month for twenty-four months. Bradley argues that the district court erred in awarding any kind of spousal support to Stacy. We agree with Bradley and reverse the district court's award of spousal support.

Iowa Code section 598.21A(1) provides:

Upon every judgment of annulment, dissolution, or separate maintenance, the court may grant an order requiring support payments to either party for a limited or indefinite length of time after considering all of the following:
a. The length of the marriage.
b. The age and physical and emotional health of the parties.
c. The distribution of property made pursuant to section 598.21.
d. The educational level of each party at the time of the marriage and at the time the action is commenced.
e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length necessary to achieve this goal.
g. The tax consequences to each party.
h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
i. The provisions of an antenuptial agreement.
j. Other factors the court may determine to be relevant in an individual case.

After considering all of the 598.21A factors, we determine that Stacy is not entitled to transitional spousal support. The goal of transitional spousal support is to aid parties as they adjust to single life and address any inequity between parties during that transition. *In re Marriage of Pazhoor*, 971 N.W.2d 530, 542 (Iowa 2022). Bridging such inequity is unnecessary here. This was a short-term marriage where both parties maintained separate households. Stacy returned to her career at Holmes Murphy in 2019 (six years ago) in Cedar Rapids and is purportedly doing well while earning an approximate six-figure salary. Further, Stacy will receive a large lump sum cash equalization payment from Bradley. Given these considerations, Stacy has the capability to maintain her independence and lifestyle, and an award of transitional spousal support is unnecessary. Therefore, we modify the dissolution decree to eliminate the award of spousal support.

### D.  Attorney and Expert Fees

The district court may award attorney fees in a dissolution of marriage action. Iowa Code § 598.36. The district court has considerable discretion in awarding attorney fees. *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). Bradley argues that the district court abused its discretion in awarding Stacy $25,000 toward her attorney fees. Stacy argues the district court abused its discretion in failing to award her requested amount attorney and expert fees. We disagree with both parties.

Given the vast differences in income between the parties and Stacy's relative success in litigating the issues in the case, we see no reason to disturb the district court's attorney's fee and expert fee award.

**E. Appellate Attorney Fees**

"Appellate attorney fees are awarded upon our discretion and are not a matter of right." *In re Marriage of Heiar*, 954 N.W.2d 464, 473 (Iowa Ct. App. 2020). When considering whether to award appellate attorney fees, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013).

We conclude that Stacy is entitled to some appellate attorney fees, but we cannot determine a reasonable award without a more specific request. Stacy requests appellate attorney fees in the sum of $35,000 but has failed to submit an affidavit for said fees. Therefore, we remand the issue of appellate attorney fees to the district court to determine a reasonable fee award. *See In re Marriage of Pleggenkuhle*, No. 19-0030, 2020 WL 376552, at *3 (Iowa Ct. App. Jan 23, 2020) (deciding the wife was entitled to appellate attorney fees but remanding the issue to the district court to determine a reasonable fee award since she failed to file a fee affidavit).

Costs of the appeal shall be equally divided between the parties.

## IV. Conclusion.

We affirm the district court's order that Bradley pay Stacy an equalization payment of $1,415,125 and award for attorney fees of $25,000. We modify the dissolution decree to eliminate the district court's award of spousal support of $2000 per month for twenty-four months. Stacy's cross-appeal claims are denied.

We remand to the district court to award Stacy appellate attorney fees in an amount it deems reasonable. Costs of the appeal shall be equally divided between the parties.

**AFFIRMED AS MODIFIED AND REMANDED WITH DIRECTIONS.**