# IN THE COURT OF APPEALS OF IOWA

No. 24-1256
Filed September 4, 2025

IN RE THE MARRIAGE OF ANGELA BETH MILLER-VERDUYN
AND JEREMY MILLER-VERDUYN

Upon the Petition of
ANGELA BETH MILLER-VERDUYN,
      Petitioner-Appellee,

And Concerning
JEREMY MILLER-VERDUYN,
      Respondent-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.

The respondent appeals the property provision of his dissolution decree.

**AFFIRMED AS MODIFIED AND REMANDED.**

Christy R. Liss and Mark Seda of Clark, Butler, Walsh & Hamann, Waterloo, for appellant.

Angela Beth Miller-Verduyn, Fargo, North Dakota, self-represented appellee.

Considered without oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**SANDY, Judge.**

Jeremy Thomas Miller-Verduyn appeals the property provision of his dissolution decree requiring him to pay a lump sum property settlement to his former wife, Angela Beth Miller-Verduyn and the means by which he was ordered to do so. Specifically, he argues that the district court should have determined the marital portion of the John Deere Tax-Deferred Savings Plan (TDSP) and deducted it from the lump sum amount and transferred said portion to Angela via a Qualified Domestic Relations Order (QDRO). In addition, he contends the amount and manner in which the district court structured the lump sum property settlement did not take into consideration his financial circumstances. Because we believe use of a QDRO in dividing the John Deere TDSP is equitably required, we modify the property equalization provisions of the divorce decree and remand for issuance of a QDRO consistent with this opinion.

## I.      Background Facts and Procedural Posture

Angela and Jeremy Miller-Verduyn were married in June 2018 and lived together in Dunkerton, Iowa, until their separation in May 2022. Jeremy had purchased the home in December 2017 for $149,200 using a $15,000 loan from his John Deere tax-deferred savings plan (TDSP). He was the sole purchaser and mortgagor. At the time of trial, the mortgage balance was $130,956, and the 2023 assessed value of the property was $194,600—yielding estimated equity of $63,644. Jeremy continued to reside in the home and remained solely responsible for the mortgage and maintenance after Angela moved out.

Jeremy, forty-seven years old at the time of trial, has been employed full-time at John Deere in Waterloo, Iowa, since 2004. In 2022, he earned $66,169 in

gross wages. His John Deere TDSP was valued at $40,000.52, with an outstanding loan of $10,208.99 as of June 2018. By February 2024, the account balance had increased to $123,515.32, with an outstanding loan of $8,855.02.

Angela, by contrast, had significantly more limited income. At the time of trial, she was working approximately ten hours per week at $8.50 per hour, with tips. Her 2022 taxable income totaled $16,458. The district court found Angela to be voluntarily underemployed. She also received an inheritance after her mother's death that included $30,000 in cash. Angela used some of the inherited monies to contribute to septic system improvements and made other contributions to the care and maintenance of the Dunkerton property.

The parties had no significant marital assets apart from the residence and Jeremy's retirement account. Each retained their personal property following the dissolution. On June 5, 2024, the district court entered its decree, awarding Jeremy full ownership of the marital home and the entirety of his retirement account, with the obligation to repay the outstanding TDSP loan. To achieve an equitable division of property, the court ordered Jeremy to pay Angela a lump sum property settlement of $92,402 by September 15, 2024.

Jeremy filed a motion to amend on June 12, which the court granted in part. Under the modified order, Jeremy was required to pay $40,000 of the $92,402 total by August 31, 2024, and the remaining $52,402 by October 31, 2024.

Angela retained sole legal custody and physical care of the parties' minor child, M.L.M.-V., and Jeremy was ordered to pay $761 per month in child support, plus an estimated $276 monthly for the child's health insurance. In addition, Jeremy was ordered to continue paying for mobile phones and service for Angela

and the child until the devices were paid off, which amounted to over $300 per month.

Jeremy appeals the trial court's property division, asserting that the $92,402 award did not properly distinguish between marital and nonmarital contributions to his TDSP, and that it imposed an unworkable financial burden. He proposed that Angela receive approximately $18,527.15 as her share of the marital portion of the TDSP via a QDRO, calculated using a pro rata formula based on six years of marriage out of twenty years of employment. He further argues that the remaining portion of the property settlement attributable to the home equity—which he calculates as $24,322—be paid in annual installments of $7,500 without interest beginning January 1, 2025.

Angela requests that the appellate court affirm the district court's ruling in full, arguing that the lump sum payment is necessary for her post-divorce support and reflects a fair division of limited assets accumulated during the marriage.

## II.     Standard of Review

"Marriage dissolution proceedings are equitable proceedings. Thus, the standard of review is de novo. Although we give weight to the factual findings of the district court, we are not bound by them." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016) (internal citations omitted). "[W]e will disturb a district court determination only when there has been a failure to do equity." *Id.*

## III.     Analysis

The parties to a marriage are each entitled to a just and equitable share of marital assets. *In re Marriage of Havran*, 406 N.W.2d 450, 451 (Iowa Ct. App. 1987). While a mathematically equal division of property is not required, an

equitable division is. *In re Marriage of Russell*, 473 N.W.2d 244, 246 (Iowa Ct. App. 1991). And although an equal division is not necessary, it should nevertheless be a general goal of trial courts to make the division of property approximately equal. *In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979). The property rights of a divorcing couple are to be adjusted as of the date of trial. *In re Marriage of Clinton*, 579 N.W.2d 835, 839 (Iowa Ct. App. 1998).

Iowa Code section 598.21(5) (2023) provides:

The court shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties after considering all of the following:

a. The length of the marriage.

b. The property brought to the marriage by each party.

c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

d. The age and physical and emotional health of the parties.

e. The contribution by one party to the education, training, or increased earning power of the other.

f. The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

g. The desirability of awarding the family home or the right to live in the family home for a reasonable period to the party having custody of the children, or if the parties have joint legal custody, to the party having physical care of the children.

h. The amount and duration of an order granting support payments to either party pursuant to section 598.21A and whether the property division should be in lieu of such payments.

i. Other economic circumstances of each party, including pension benefits, vested or unvested. Future interests may be considered, but expectancies or interests arising from inherited or gifted property created under a will or other instrument under which the trustee, trustor, trust protector, or owner has the power to remove the party in question as a beneficiary, shall not be considered.

j. The tax consequences to each party.

k. Any written agreement made by the parties concerning property distribution.

l. The provisions of an antenuptial agreement.

m. Other factors the court may determine to be relevant in an individual case.

Section 598.21(6) addresses the distribution of inherited or gifted property in a dissolution. That subsection provides:

Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

Iowa Code § 598.21(6).

A district court should assign a value to the property awarded to each of the parties. This will allow a reviewing court to assess whether an equitable division of property was effectuated. It will also aid the parties in better understanding the respective property awards, which will, in some cases, dispense with the need to appeal. *In re Marriage of Bonnette*, 584 N.W.2d 713, 714 (Iowa Ct. App. 1998).

In our view, equity was not done here. The district court did not determine what the marital portion of the John Deere TDSP plan was nor did it provide that any such award be transferred by a QDRO. Similarly, the district court did not determine what, if any, pre-marital credit it was giving Jeremy toward the home. The district court did not determine what, if any, inherited credit it was giving Angela toward the home. Perhaps the district court gave neither credit. But we are left guessing as the district court's determination on those issues is not contained in its written order.

The ability of the parties to meet the financial obligations imposed by a dissolution decree is a relevant factor to consider in determining an equitable division of property. *In re Marriage of Siglin*, 555 N.W.2d 546, 549–50 (Iowa Ct. App. 1996). Here, the district court did not analyze Jeremy's ability—given his $66,169 per year salary—to meet the financial obligations imposed by the property equalization payment of $92,402.

Indeed, we give strong deference to a trial court's property award if it appears that the court sorted through the economic details of the parties and made a fair division which is supported by the record. *In re Marriage of Vieth*, 591 N.W.2d 639, 641 (Iowa Ct. App. 1999). Such deference is decidedly in the public interest. When appellate courts unduly refine these important, but often conjectural, judgment calls, they thereby foster appeals in hosts of cases, at staggering expense to the parties wholly disproportionate to any benefit they might hope to realize. *See id.* However, here, the nature and amount of the property equalization payment is not supported by the record.

### A. John Deere TDSP

Although somewhat unclear and unspecified, we interpret the district court order as having taken Angela's share (which we are uncertain of the exact apportionment of) of the John Deere TDSP account and incorporated it into a lump sum cash equalization payout. Yet, the preferred method of valuation of retirement benefits is to divide a plan through a QDRO. *In re Marriage of Fall*, 593 N.W.2d 164, 167 (Iowa Ct. App. 1999); *In re Marriage of Burrage*, No. 04-0711, 2004 WL 2952685, at *2 (Iowa Ct. App. Dec. 22,

2004) ("[T]he financial obligation resulting from a lump sum payment is often beyond a pensioner's present economic ability to pay."); *In re Marriage of Mott*, 444 N.W.2d 507, 511 (Iowa Ct. App. 1987) ("We find, based on Roger's present financial status, it would be inequitable to award Jennifer a lump sum percentage . . . . This obligation would be outside Roger's present economic ability to pay."); *In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996).

We are cognizant that "ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). Here, we cannot necessarily say that we disagree with the court's valuations because it did not provide valuations nor how it determined them. The district court did not show charts, spreadsheets, math, or other formulas, so we are unable to determine how it arrived at a $92,402 property equalization.[1] And the parties' pretrial stipulation form is of little assistance (as it must have been for the district court).

Upon our de novo review of the record, the John Deere TDSP account balance at the time of the parties' marriage had a value of $40,000.52 with a loan balance of $10,208.99—a net total of $29,791.53. Because of the relatively short duration of the parties' marriage (six years),

---

[1] To the extent Angela argues that the district court provided a larger property equalization payout in lieu of spousal support, the district court did not indicate as such. To the contrary, the district court expressly ordered that "neither party shall pay spousal support to the other party." Moreover, Angela expressly waived receipt of any spousal support in paragraph four of the pretrial stipulation form.

we treat the $29,791.53 as nonmarital property. *See In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). The John Deere TDSP account balance at the time of the dissolution trial had a balance of $123,515.32 with a loan balance of $8,855.02—a net total of $114,660.30. The marital increase is therefore $84,868.77. When evenly split, Angela's marital share would be $42,434.38.[2]

For the reasons stated above, Angela's marital share of the John Deere TDSP should be paid by a QDRO. Based on the record, Jeremy does not have the financial resources to pay such a large amount in a cash equalization payment. We therefore remand to the district court for entry of a QDRO to Angela in the amount of $42,434.38. We believe that such is equitable in that it will not have a negative tax consequence for the parties. *See* Iowa Code § 598.21(5)(j). Additionally, it would relieve some of the financial burden on Jeremy given his earnings relative to his ongoing financial obligations. In the end, it would benefit Angela in that it would provide her with a retirement account compounding over time—something she does not now have nor had prior to the parties' marriage.

### B. Marital Home

It is important to remember marriage does not come with a ledger. *See In re Marriage of Miller*, 552 N.W.2d 460, 464 (Iowa Ct. App. 1996). Spouses agree to accept one another "for better or worse." Each party's total contributions to the

---

[2] We acknowledge Jeremy's analysis relating to the *Benson* formula for deriving Angela's share ($18,527.15) of the John Deere TDSP and conclude it would be inappropriate to use here due to defined-contribution nature of Jeremy's retirement account. *See In re Marriage of Benson*, 545 N.W.2d 252, 255–56 (1996).

marriage cannot be reduced to a dollar amount. Many contributions are incapable of calculation, such as love, support, and companionship. "Financial matters . . . must not be emphasized over the other contributions made to a marriage in determining an equitable distribution." *Id.* at 465.

Here the district court found that Angela spent a portion of her inheritance on making improvements and maintaining the joint marital home. The home was purchased by Jeremy approximately one year prior to the parties' marriage, and Angela was living with Jeremy in the home at the time of said purchase. Accordingly, we find it equitable that Jeremy pays Angela a property settlement for her portion of the equity in the joint marital home—$31,822.[3]

IV.    Conclusion

We accordingly modify the divorce decree as it relates to a portion of the district court's property equalization payment. Specifically, we order Jeremy to pay $31,822 as a property equalization payment to Angela no later than six months following the date this opinion is filed. Additionally, we remand to the district court to effectuate the issuance of a QDRO to Angela in the amount of $42,434.38.

**AFFIRMED AS MODIFIED AND REMANDED.**

---

[3] The district court found the value of the home to be $194,600 with a mortgage of $130,956 for $63,644 worth of equity. $31,822 would be Angela's equitable share.